IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL STOFFA,                          )
                                        )
               Petitioner,              )          Civil Action No. 2:22-cv-621
                                        )
        v.                              )
                                        )          Magistrate Judge Patricia L. Dodge
MICHAEL ZAKEN, *et al.*,                )
                                        )
               Respondents.             )

## MEMORANDUM

Before the Court[1] is the counseled Petition for a Writ of Habeas Corpus (ECF 1) filed by

state prisoner Daniel Stoffa under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). For the reasons below, the Court will deny the Petition and

deny a certificate of appealability.

## I.    Introduction

In the Petition, Stoffa challenges the 2018 judgment of sentence imposed on him by the

Court of Common Pleas of Fayette County after a jury found him guilty of: (1) rape, 18 Pa.C.S.

§ 3121(a)(1) (forcible compulsion); (2) rape, 18 Pa.C.S. § 3121(c) (rape of a child); (3) aggravated

indecent assault, 18 Pa.C.S. § 3125(a)(2) (forcible compulsion); (4) indecent assault, 18 Pa.C.S.

§ 3126(a)(7) (victim under 13 years old); (5) indecent assault, 18 Pa.C.S. § 3126(a)(8) (victim

under 16 years old); (6) involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(b) (victim under

13 years old); (7) rape, 18 Pa.C.S. § 3121(c) (rape of a child); (8) aggravated indecent assault,

18 Pa.C.S. § 3125(a)(2) (forcible compulsion); (9) indecent assault, 18 Pa.C.S. § 3126(a)(7)

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to
have a United States Magistrate Judge conduct proceedings in this case, including entry of a final
judgment.

(victim under 13 years old); (10) involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(b) (victim under 13 years old); (11) rape, 18 Pa.C.S. § 3121(a)(1) (forcible compulsion); (12) aggravated indecent assault, 18 Pa.C.S. § 3125(a)(2) (forcible compulsion); and (13) indecent assault, 18 Pa.C.S. § 3126(a)(2) (forcible compulsion). (Trial Tr. at 225-26.)

Stoffa raises one ground for habeas relief in the Petition. (ECF 1 at 5.) He claims that his trial counsel, Attorney Thomas Shaffer, "was ineffective for not striking a sitting juror [Juror 400] who testified [during voir dire] that he could not be fair and impartial, denying [Stoffa] his Sixth Amendment right to a fair and impartial jury trial." (*Id.*)

## II.    Relevant Background[2]

The victims in this case were three minor children, whose ages ranged between six and sixteen at the time of the crimes. Stoffa had been in a relationship with the victims' mother. His jury trial was held from January 2 through January 4, 2018. Attorney Shaffer was Stoffa's privately retained counsel.

During voir dire, the trial court explained to the prospective jurors the charges Stoffa faced and a juror's duty to apply the law as the court explains it. (Trial Tr. at 5.) The court asked the prospective jurors, as a group, if "there [is] anything about the nature of the case or the crime[s] which would cause you to be biased against the defendant?" (*Id.* at 25.) After several prospective jurors raised their hands indicating that they would be biased, the court reiterated that all defendants are presumed innocent until the prosecution proves guilt beyond a reasonable doubt.

---

[2] Respondents have submitted the original state court records ("SCR) for Stoffa's criminal cases here (docket numbers CP-26-CR-0000366-2017 and CP-26-CR-0000367-2017). The SCR for each case is divided into two subparts (labeled Part I and Part II), and the documents contained in them are numbered sequentially. The SCR also contains the transcripts of Stoffa's January 2018 trial and the evidentiary hearing held on March 16, 2020 during the litigation of his state petition for collateral relief.

(*Id.* at 24-25.) Five more prospective jurors then raised their hands, indicating that they too would be biased. (*Id.* at 25-26.) Among these prospective jurors was the juror at issue, Juror 400. When the court addressed Juror 400, she asked him: "[D]o you believe that you would be unable to serve as a fair and impartial juror?" (*Id.* at 26.) Juror 400 answered, "Probably." (*Id.*)

At the request of Attorney Shaffer, the court next asked the prospective jurors, as a group, if any of them or a member of their household was involved with any child advocacy group. (*Id.* at 27.) Six prospective jurors, including Juror 400, indicated that this scenario applied to them. (*Id.* at 27-28.) The court asked those who had answered yes to raise their hands if they would be unable to serve fairly and impartially because of their involvement with children. (*Id.* at 28.) Juror 400 once again raised his hand, as did several other prospective jurors. (*Id.*)

The trial court then held a sidebar discussion with Attorney Shaffer and the prosecutor so that they could move to strike prospective jurors. (*Id.* at 28-33.) Attorney Shaffer moved to strike nine prospective jurors for cause. (*Id.* at 31-33.) The prosecutor explained that the only two jurors he planned to move to strike were among those mentioned by Attorney Shaffer. Neither Attorney Shaffer nor the prosecutor moved to strike Juror 400. (*Id.* at 32.)

Near the end of this discussion, the court stated:

> Counsel would you approach once again, please. I'm just raising this with you because I had notes on other jurors and I haven't heard any motions. I'll give you the opportunity.
> - - -
> We have also [Juror 400]. Upon inquiry he would probably be biased.

(*Id.* at 32-33.) Attorney Shaffer responded that he thought Juror 400 was "okay" because Juror 400 was a teacher and "was probably educated to understand the Constitution." (*Id.* at 33.) The court then stated: "Okay I won't strike unless there is a motion." (*Id.*) Attorney Shaffer made no motion and Juror 400 was later selected to sit on the jury.

The trial court summarized the evidence introduced at Stoffa's trial as follows:

> [Mr. Stoffa] was in a relationship with [victims'mother] for eight years, and he lived with [her] and her three daughters.
>
> The oldest daughter testified that on December 31, 2010, Mr. Stoffa raped her. [Trial Tr.] at 62. She was 16 at the time. Her testimony included details about her encounter with Mr. Stoffa and she testified that this happened three or four more times before she moved out of the house.
>
> The middle daughter testified that in 2011, Mr. Stoffa raped her. *Id.* at 80. She was 11 at the time. She testified that Mr. Stoffa continued to rape her for several years.
>
> The youngest daughter testified that she was 6 when Mr. Stoffa first raped her, and that he continued to rape her for several years until she was 11 or 12. *Id.* at 102.
>
> The jury heard testimony from Dr. Mary Carrasco, who performed a forensic medical exam of the younger two daughters, and Dr. Carrasco testified about the results of the exams. *Id.* at 152-159. The jury also heard from one of Mr. Stoffa's coworkers, Joseph Holchin. Mr. Holchin testified about remarks made by Mr. Stoffa at work. Mr. Holchin's testimony was that Mr. Stoffa would frequently brag to his coworkers on Monday mornings that he "got young p[ussy]." *Id.* at 166. Finally, Mr. Stoffa testified and denied all allegations.

*Commonwealth v. Stoffa*, Nos. 366 and 367 of 2017, slip op. at 2 (C.P. Fayette Co., March 26, 2018) (SCR 367-2017, Part I at 31.)

The court sentenced Stoffa to a total aggregate term of 20 to 40 years' imprisonment. Stoffa, through Attorney Shaffer, filed a notice of appeal with the Superior Court of Pennsylvania. During the litigation of Stoffa's direct appeal, he retained new counsel who represented him throughout the remainder of that appeal, then in his state collateral proceeding, and now in this federal habeas case.

Stoffa raised one claim in his direct appeal. He asserted that the trial court erred "by allowing [Stoffa's] fellow employee to make grossly vague [and] unsubstantiated statements regarding [Stoffa] having sex with young girls that were highly prejudicial to the case[.]" *Commonwealth v. Stoffa*, 2019 WL 123310, at *2 (Pa. Super. Ct. Jan. 7, 2019) ("*Stoffa I*"). The

Superior Court held this claim was waived because Stoffa did not preserve it by raising it to the trial court. It also held that if Stoffa "had…properly preserved this claim for our review, we would deem it meritless." *Id.*

After his direct appeal concluded, Stoffa, through counsel, pursued collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq*. Stoffa raised several claims alleging that Attorney Shaffer provided him with constitutionally deficient performance, including the claim that he raises in this federal habeas case—that Attorney Shaffer was ineffective for failing to move to strike Juror 400 for cause after Juror 400 indicated he probably could not serve fairly and impartially.[3]

The trial court, now the PCRA court, held an evidentiary hearing on March 16, 2020. Eight witnesses testified, including Attorney Shaffer and Stoffa.

Attorney Shaffer testified that he had been an attorney for 20 years, including nine years with the Fayette County Public Defender's Office. (PCRA Hr'g Tr. at 13-14.) He estimated that he conducted around 250 criminal jury trials as a defense attorney. (*Id.* at 14.)

When Attorney Shaffer was asked why he did not move to strike Juror 400, he responded that he did not believe Juror 400 when he indicated he "probably" would be unable to serve as a fair and impartial juror. (*Id.* at 37, 44-45.) It was his assessment that Juror 400, who, in addition to being a teacher served on a county board, answered the questions the way he did because he did

---

[3] Stoffa raised this claim in a "Supplement to Petition for Post Conviction Relief." In this document, he requested "leave of court to supplement the original PCRA petition with another allegation of ineffective assistance of counsel recently brought to counsel's attention regarding a matter during voir dire examination." (SCR 366-2017, Part I at 38.) The two other claims Stoffa raised were that Attorney Stoffa was ineffective for failing to call: (1) character witnesses who would testify to his good reputation in the community; and (2) witnesses who would have testified that the oldest victim was babysitting for them on the date and time she stated that Stoffa raped her. (*See* PCRA Ct. Op., ECF 1-2 at 1, 7, 13-16.)

not want to be selected. (*Id.* at 47; *id.* at 44, "Q. …did you believe [Juror 400], that he would be biased? A. No, I did not.") Attorney Shaffer stated: "[W]orking for the county myself[,] everyone knows how to get out of jury duty and I was thinking that based on [Juror 400's] answer, and based on my observations of him, I thought he was just trying to get out of jury duty." (*Id.*)

Attorney Shaffer added that during voir dire he told Stoffa that he thought Juror 400 was trying to "get out of jury duty." (*Id.* at 26, 44-45.) He said he advised Stoffa that he had no objection to Juror 400 because Juror 400 was a teacher and he believed that "[t]here is no better person…to [j]udge a child than a teacher because every day they [j]udge children[.]" (*Id.*) Attorney Shaffer said that Stoffa agreed "to keep" Juror 400. (*Id.* at 26.)

When Stoffa testified at the PCRA hearing, he said that he twice told Attorney Shaffer "that [he] did not want [Juror 400] on the panel" because Juror 400 said that he could not be fair. (*Id.* at 117, 124.)

After the hearing, the PCRA court issued an opinion and order denying each of Stoffa's claims. It held that Stoffa did not meet his burden of establishing either the performance or prejudice prong of the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which governs ineffective assistance of counsel claims and is discussed in more detail below. (PCRA Ct. Op., ECF 1-2 at 11-13.)

In his appeal to the Superior Court, Stoffa argued that the court must accept the premise that Juror 400 was a biased juror because he indicated during voir dire that he could not be impartial and there was no follow-up questioning of him by either the court or counsel. Starting with that premise, Stoffa reasoned that failing to move to strike a juror who is biased against the defendant can never be a reasonably strategic decision and thus the Superior Court must conclude that Attorney Shaffer's decision not to strike Juror 400 was objectively unreasonable (*Strickland*'s

performance prong). Stoffa further argued that the seating of a juror who is biased is a structural error not subject to harmless error review and so the Superior Court must presume prejudice (*Strickland*'s second prong) in his case. (*Br. for Appellant*, No. 913 WDA 2020 at 3, 26, 48. (Pa. Super. Ct. Nov. 25, 2020)).

The Superior Court rejected Stoffa's argument on prejudice. It held that since Stoffa's claim was one of ineffective assistance of counsel, he had to satisfy *Strickland's* prejudice prong, which requires that a petitioner establish that "there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission." *Commonwealth v. Stoffa*, 2021 WL 2473891, *4, 7-8 (Pa. Super. Ct. 2021) ("*Stoffa II*").

The Superior Court then held:

> "In making [a prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury...." *Commonwealth v. Lesko*, 15 A.3d 345, 383 (Pa. 2011) (emphasis in original). Here, the Commonwealth's case rested largely upon testimonials from L.H., C.T., and L.T. that were mostly uncorroborated by physical evidence; however, [Stoffa] was unsuccessful in eliciting significant inconsistencies or falsities in their respective testimonies. *See* N.T. (Trial), 1/3/18, at 70-75 (cross-examination of L.H.); *id.* at 91-94 (cross-examination of C.T.); *id.* at 108–110 (cross-examination of L.T.). Additionally, and particularly detrimental to [Stoffa's] claim of innocence, was [Stoffa's] co-worker's testimony that [Stoffa] would boast that he "got young pussy all the time." N.T. (Trial), 1/4/18, at 166. As aforementioned, on direct appeal, this Court characterized this statement as "[Stoffa] virtually admitting his criminal conduct." *See Stoffa [I]*, 160 WDA 2018 (unpublished memorandum at *6). In light of the overwhelming evidence of [Stoffa's] guilt, we discern no error on the part of the PCRA court in denying relief on the basis of this claim of ineffective assistance.

*Id.* at *8.

After the Pennsylvania Supreme Court denied Stoffa's petition for allowance of appeal, *Commonwealth v. Stoffa*, 270 A.3d 433 (Pa. 2021), he filed the instant counseled Petition (ECF 1) with this Court within which he raises the ineffective assistance claim outlined above. (*See also* Brief in Support of Petition, ECF 2.) Respondents have filed the Answer (ECF 13) and Stoffa has filed the Reply (ECF 17).

## II.      Discussion

### A.  Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is Stoffa's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief on his claim. Most important to this case is the burden imposed on him by the standard of review enacted by AEDPA, which is discussed below. But, even if he overcame that standard of review (he has not), Stoffa would not receive federal habeas relief unless he showed that he is in custody in violation of his federal constitutional rights.[4] 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

### B.  Standard of Review

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of the AEDPA. Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure

---

[4]  If, when evaluating a claim, the Court determines that the petitioner has satisfied AEDPA's standard of review, the Court must then "proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Vickers*, 858 F.3d at 849 (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)). That is because "a federal court can only grant the Great Writ if it is 'firmly convinced that a federal constitutional right has been violated[.]'" *Id.* (citing *Williams*, 529 U.S. at 389, and *Horn v. Banks*, 536 U.S. 266, 272 (2001) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review…none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard[.]")).

that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

One of the things that AEDPA put into place was a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies to any federal habeas claim "that was adjudicated on the merits" by the state court (here, the Superior Court)[5] and, in relevant part, it prohibits a federal habeas court from granting relief unless the petitioner first has established that the state court's "adjudication of the claim":

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*[.]

28 U.S.C. § 2254(d)(1) (emphasis added).[6]

    1. "Clearly established Federal law"

In applying § 2254(d)(1) in this case, the Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of

---

[5] When applying § 2254(d), the federal habeas court considers the "last reasoned decision" of the state courts. *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)); *Brown v. Sup't Greene SCI*, 834 F.3d 506, 512 (3d Cir. 2016). In this case that is the Superior Court's decision in *Stoffa II*.

[6] Section 2254(d)(1) applies to questions of law and mixed questions of law and fact, which is the type of claim Stoffa presents in this case. Another provision of AEDPA's standard of review, codified at § 2254(d)(2), provides that a petitioner must show that the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This provision applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Section 2254(d)(2) does not apply to this case because the Superior Court's decision to deny Stoffa's claim was not premised on a finding of fact.

the United States[,]" 28 U.S.C. § 2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). It "includes only 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *White v. Woodall*, 572 U.S. 415, 420 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012), which quoted *Williams*, 529 U.S. at 412).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193-94 (1977) (internal quotation marks omitted). This holding constitutes the "clearly established" law for purposes of § 2254(d)(1). *Panetti v. Quarterman*, 551 U.S. 930, 948-49 (2007) (applying *Marks* to a splintered decision of the Court and concluding that the narrowest rule "constitutes clearly established law for purposes of § 2254") (internal quotation marks omitted). "[A] state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court precedent." *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Kane v. Garcia Espitia*, 546 U.S. 9 (2005)).

### 2. The "contrary to" clause

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of Stoffa's claim was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a

rule that contradicts the governing law set forth in [Supreme Court] cases," *id.* at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court decision applying the correct legal rule from Supreme Court decisions to the facts of a particular case does not fit within § 2254(d)(1)'s "contrary to" clause and will be reviewed under the "unreasonable application" clause. *Id.*

### 3. The "unreasonable application of" clause

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Stoffa must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Stoffa must prove that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*" *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

### C.  The Superior Court's Adjudication of Stoffa's Claim was Neither Contrary to, Nor an Unreasonable Application of, *Strickland*

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). This represents the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), in which to analyze them under AEDPA's standard of review. *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Titlow*, 571 U.S. at 24.

Under *Strickland*, it is the petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690).

*Strickland* also requires that a petitioner show that he was prejudiced by his trial counsel's deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means one "sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It is a lower standard than a

preponderance of the evidence, but that distinction matters "only in the rarest case." *Richter*, 562 U.S. at 112.

As set forth above, the Superior Court applied the *Strickland* standard when it adjudicated Stoffa's claim and denied it because he failed to establish prejudice (*Strickland's* second prong).[7] Because a petitioner cannot prevail on a Sixth Amendment claim unless he establishes both prongs of the *Strickland* test, the Supreme Court permits courts to address only the prejudice prong if it is more efficient to proceed in that way, which is what the Superior Court did when it evaluated Stoffa's claim. 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

Stoffa asserts that the Superior Court should have presumed Strickland's *prejudice* prong. His argument is not persuasive because the Supreme Court has relieved a petitioner from the obligation to make an affirmative showing of prejudice in only a very narrow set of cases. They are: (1) when a defendant suffers an "[a]ctual or constructive denial of the assistance of counsel altogether[,]"; (2) "various kinds of state interference with counsel's assistance[,]" *Strickland*, 466 U.S. at 692 (citing *United States v. Cronic*, 466 U.S. 648, 659, and n.25 (1984)); and (3) "when counsel is burdened by an actual conflict of interest." *Id.*; *see, e.g.*, *Barney v. Adm'r of New Jersey*

---

[7] Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g.*, *Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland's*] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]"). *See also Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (discussing *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987) and noting that in it, the Pennsylvania Supreme Court explained that the Pennsylvania standard judging ineffectiveness claims was identical to the *Strickland* standard.)

*State Prisons*, 48 F.4th 162, 165 (3d Cir. 2022). None of these circumstances apply here. Thus, the Superior Court's decision that Stoffa had to demonstrate prejudice under and as defined by *Strickland* to prevail on his claim of ineffective assistance was not "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

Stoffa also asserts that because Attorney Shaffer's alleged deficient performance resulted in a structural error (the denial of a fair and impartial jury), he did not need to prove that Attorney Shaffer's inaction prejudiced him. *See Weaver v. Massachusetts*, 582 U.S. 286, 294-300 (2017) (discussing the concept of structural error and explaining why, "in the case of a structural error *where there is an objection at trial and the issue is raised on direct appeal*, the defendant generally is entitled to automatic reversal regardless of the error's actual effect on the outcome.") (Emphasis added). In support of his argument, Stoffa cites *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001).

In *Hughes*, the petitioner, who was a federal inmate, moved to vacate his sentence under 28 U.S.C. § 2255. He argued that his trial counsel was ineffective for failing to strike a juror who stated during voir dire that she did not think she could be impartial because she had close relationships with several law enforcement officers. 258 F.3d at 456. The petitioner's counsel did not question the prospective juror further or move to strike her for cause or by peremptory strike and she sat as a juror on his case. The district court denied the petitioner's § 2255 motion. In *Hughes*, the United States Court of Appeals for the Sixth Circuit reversed in a 2 to 1 decision.

The *Hughes* court noted the particular deference given to decisions an attorney makes during voir dire. *Id.* at 457. It held, however, that since there was no attempt by either counsel or the district court to rehabilitate the juror in question, the record evidenced only her clear declaration

that she did not think she could be a fair juror. *Id.* at 457-60. Thus, the *Hughes* court found the juror "to have been actually biased in this case." *Id.* at 460. It then held that "[t]he question of whether to seat a juror who is actually biased against the defendant is not a discretionary or strategic decision." *Id.* at 463.

Turning next to whether the petitioner was prejudiced by his trial counsel's ineffective assistance, the *Hughes* court cited to circuit court decisions for the principle that the presence of a biased juror is a structural error that is not subject to harmless error analysis. *Id.* at 463 (citing *Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992) (see footnote 10, *infra*) and decisions issued on direct appeal filed by federal prisoners). It then reasoned that since the petitioner's counsel's deficient performance resulted in a structural error, "prejudice under *Strickland* is presumed, and a new trial is required." *Id.* at 463 (citing *United States v. Gonzalez*, 214 F.3d 1109, 1110 (9th Cir. 2000), which was a decision issued on the direct appeal of a federal defendant who contended that the trial court erred in overruling his challenge for cause to a juror).

Stoffa cited to *Hughes* when he litigated his claim in state court. The Superior Court, noting that it is not bound by the decisions of the federal courts of appeals, declined Stoffa's invitation to apply *Hughes'* presumption of prejudice rule. *Stoffa II*, 2021 WL 2473891, at *7 n.2. The Superior Court held that since Stoffa's claim was one of ineffective assistance of counsel, to prevail on it he had to satisfy *Strickland's* prejudice prong and show that "there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission." *Id.* at *4, 7-8.[8]

---

[8]  The Superior Court also explained that it found *Hughes* to be distinguishable because in that case there was no sworn testimony from trial counsel as to why he did not move to strike the juror in question. In contrast, the Superior Court explained, in Stoffa's case during both the trial and the PCRA hearing Attorney Shaffer articulated his strategic reason for not moving to strike Juror 400 *Footnote continue on next page…*

Stoffa's reliance on *Hughes* in support of his request for habeas relief is misplaced. As the Superior Court explained, it was under no obligation to apply the law of the Sixth Circuit. And most importantly for this case, this Court cannot look to *Hughes* when it evaluates Stoffa's claim under AEDPA's standard of review. The Supreme Court "has repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) (quoting § 2254(d)(1) and citing *Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam)). *See, e.g.*, *Renico v. Lett*, 559 U.S. 766, 779 (2010) (state court's failure to apply decision by federal circuit court "cannot independently authorize habeas relief under AEDPA.").[9] Additionally, "[c]ircuit precedent cannot 'refine or sharpen a

---

(he thought he would be a favorable juror because he was a teacher, and he also did not think Juror 400 was biased against the defense and instead answered the questions the way he did because he was trying to avoid being selected). *Stoffa II*, 2021 WL 2473891, at *7 n.2. The Superior Court added that "[i]t is also consequential that Attorney Shaffer moved to strike nine other of the jurors who indicated bias, indicating that he was not sitting idly by during the jury selection process. *Id.* (citing Trial Tr. at 2-33.) The Superior Court explained, however, that "[o]wing to our conclusion that [Stoffa] could not prove the prejudice prong of *Strickland/Pierce*, we need not determine the reasonableness of trial counsel's strategy. We merely note that, in contrast to *Hughes*, trial counsel was actively engaged during voir dire and offered an explanation for sitting the juror who expressed bias." *Id.*

[9]  Of course, "AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (quoting *Carey v. Musladin*, 549 U.S. 70, 81 (2006) (Kennedy, J., concurring in judgment)). "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). Nevertheless, a state court decision may not be overturned on habeas review only because the decision conflicts with decisions of any court other than the United States Supreme Court. Decisions from other courts are relevant only to the extent that may be persuasive for purposes of determining whether the state court's decision was an "unreasonable application of" the "clearly established Federal law, as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d)(1); *Price v. Vincent*, 538 U.S. 634, 643 n.2 (2003) (citing lower federal and state court cases to show that the state court's adjudication was not objectively unreasonable). As explained above, however, "a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court precedent." *Rountree*, 640 F.3d at 537.

general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.'" *Lopez*, 574 U.S. at 2 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam)).

Thus, when ruling on the merits of a claim brought by a federal prisoner in a § 2255 motion that presented an issue the Supreme Court had not yet decided, the Sixth Circuit Court of Appeals in *Hughes* could hold that the circumstances presented in that case were those in which it would presume prejudice on an ineffective assistance of counsel claim. However, this Court cannot fault the Superior Court for deciding differently in Stoffa's case. That is because this Court, unlike the court of appeals in *Hughes*, is applying AEDPA's standard of review under § 2254(d)(1) to a state court adjudication of a claim.[10]

The Court also notes that the only case in which the Supreme Court has decided how to evaluate a claim that trial counsel's ineffectiveness resulted in a structural error is *Weaver v. Massachusetts*, 582 U.S. 286 (2017). The structural error at issue in that case was a Sixth Amendment public-trial violation (specifically, the closing of the court during voir dire). The Supreme Court explained that it granted certiorari to resolve the disagreement among the federal courts of appeals and some state courts as to whether a defendant must prove prejudice when the structural error "was neither preserved nor raised on direct review but is raised later via a claim alleging ineffective assistance of counsel." *Weaver*, 582 U.S. at 293. It also made clear that it was resolving the disagreement "specifically and only in the context of trial counsel's failure to object

---

[10] Stoffa also cites *Johnson v. Armontrout*, 961 F.2d 748 (8th Cir. 1992) to support his contention that prejudice should be presumed under *Strickland* when counsel's ineffectiveness resulted in the seating of biased jurors. *Johnson* is inapplicable to this case because it was decided before AEDPA went into effect in 1996. Here, the Court is prohibited from granting Stoffa habeas relief unless he overcomes § 2254(d)'s standard of review. In contrast, the court in *Johnson* was reviewing the petitioner's claim de novo.

to the closure of the courtroom during jury selection." *Id.* at 294. In *Weaver*, a majority of the Court agreed that a showing of prejudice was required for an ineffectiveness claim concerning the failure to object to a courtroom closure.[11] *Id.* at 299-303, 305-08.

Thus, Stoffa's reliance on *Hughes'* presumed prejudice rule when trial counsel's alleged deficient performance results in a structural error is unavailing. For the reasons explained above, the decision in *Hughes* cannot support a finding that the Superior Court's adjudication of his claim was "contrary to" *Strickland*. And when the Supreme Court considered a related, albeit different, issue in *Weaver* it did not presume prejudice. *See also* footnote 12, *infra*.

The only remaining question for this Court is whether the Superior Court's adjudication of Stoffa's claim was an "unreasonable application of" *Strickland*. As discussed above, to show this, Stoffa must do more than convince this Court that the Superior Court's decision was incorrect. *See, e.g.*, *Dennis*, 834 F.3d at 281. He must show that its decision was objectively unreasonable,

---

[11] The defendant in *Weaver* argued that under *Strickland* prejudice could be established "even if there is no showing of a reasonable probability of a different outcome,…if the convicted person shows that attorney errors rendered the trial fundamentally unfair." 582 U.S. at 299. Justice Kennedy, delivering the opinion of the Court in which five other Justices joined, explained that it would "assume," "[f]or the analytical purposes of th[e] case," the petitioner's interpretation of *Strickland* is the correct one," but that, in light of its ultimate holding, it "need not decide that question here." *Id.* Justice Thomas and Justice Gorsuch joined the majority opinion. In his concurring opinion, joined by Justice Gorsuch, Justice Thomas wrote that "*Strickland* does not hold, as the Court assumes, that a defendant may establish prejudice by showing counsel's errors rendered the trial fundamentally unfair. Because the Court concludes that the closure during petitioner's jury selection did not lead to fundamental unfairness in any event, no part of the discussion about fundamental unfairness is necessary to the result." *Id.* at 306. Justice Alito concurred in the judgment of the Court. In his concurring opinion, which was joined by Justice Gorsuch, Justice Alito wrote that the case called for a straightforward application of the *Strickland* standard. Therefore, he wrote, the defendant either had to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," or that his case fell within the "very narrow set of cases in which the accused has effectively been denied counsel altogether: These include the actual or constructive denial of counsel, state interference with counsel's assistance, or counsel that labors under actual conflicts of interest." *Id.* at 307-08.

meaning that it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Stoffa has not met this difficult burden. "It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied[,]" *Buell v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999), and that is exactly what the Superior Court did here when it denied Stoffa's claim.

In conclusion, because Stoffa has not satisfied his burden of establishing that the Superior Court's adjudication of his claim that Attorney Shaffer provided him with ineffective assistance "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254, the Court cannot grant him habeas relief. Accordingly, the Court will deny the Petition.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Stoffa's claim should be

denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability.

**IV.    Conclusion**

Based on the above, the Court will deny the Petition and will deny a certificate of appealability.

An appropriate Order follows.


Date:  March 22, 2024

/s/ Patricia L. Dodge<br>
PATRICIA L. DODGE<br>
United States Magistrate Judge